IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

HELENA DIVISION

_____

| | | |
|---|---|---|
| PRESTON EDWARD GOFF, | ) | Cause No. CV 09-04-H-DWM-RKS |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | FINDINGS AND RECOMMENDATIONS |
| | ) | OF U.S. MAGISTRATE JUDGE |
| STATE OF MONTANA, | ) | |
| | ) | |
| Respondent. | ) | |

_____

On February 11, 2009, Petitioner Preston Goff filed this action seeking a writ of habeas corpus under 28 U.S.C. §§ 2241 and 2254.  Petitioner is a state prisoner proceeding pro se.

Petitioner failed to pay the $5.00 filing fee or file a motion to proceed in forma pauperis.  Under the circumstances of this case, there is no point in quibbling about that.

**I. Background**

Petitioner is incarcerated at the Flathead County Detention Center in Kalispell,

Montana. Pet. (doc. 1) at 1 ¶ 1. Most habeas petitions challenge the legal reasons for a prisoner's custody in a detention center. Petitioner's challenge is directed at how he got there. The Court will proceed "on the assumption that all the allegations in the [petition] are true (even if doubtful in fact)." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, ___, 127 S. Ct. 1955, 1965 (2007).[1]

Petitioner had previously been convicted of one or more crimes in Montana. In the fall of 2008, he was on probation. When Petitioner failed to appear for a revocation hearing, a Montana court issued a bench warrant for his arrest. Pet. at 1 ¶ 2.

On September 18, 2008, Petitioner was arrested in Pelham, Alabama. Petitioner's lawyer advised him to fight extradition. The State of Montana obtained a governor's warrant on or about November 25, 2008. Id. at 2 ¶¶ 3-5.

On December 20, 2008, Petitioner's custody was assumed by an agent of Court Services, Inc., for transport to Montana. Notwithstanding his arrest on a fugitive warrant – and two convictions for escape[2] – Petitioner appeared so trustworthy to the Court Services Agent that the Agent insisted Petitioner should drive the Budget Rent-a-Car van. The duo traveled from Alabama and Arkansas to Texas, Nevada, and

---

[1] That assumption in this instance probably pushes even artificial credibility to its limits.

[2] See CONWeb, http://app.mt.gov/conweb (Feb. 11, 2009).

several locations in California, dropping off felons here and there at local jails along the way.  Petitioner drove and kept a wary eye on the other passengers, who were handcuffed but otherwise unrestrained.  The Agent napped, sans handcuffs, in the front passenger seat.  Id. at 2-3 ¶¶ 6-13.

On December 24, 2008, after all the other passengers had been dropped off, Petitioner and the Agent left Redding, California, bound for Kalispell, via Seattle. At some point, the Agent called his boss and said, quite untruthfully, that the pair were about 200 miles from Kalispell and would arrive there in a few hours.  Then the Agent hung up, told Petitioner to drive to Boise, Idaho, and "proceed[ed] to go back to sleep."  Id. at 3-4 ¶¶ 14-19.

In Boise, the Agent instructed Petitioner to drive to the airport.  There, the Agent turned in the rented van.  Refreshed by his slumbers, he decided to go ask Alice at Canyon Air Charter how much it would cost to charter a flight to Pittsburgh, Pennsylvania.  Alice told him it would be $25,000.  Apparently, that made the Agent feel small,[3] because he peremptorily ordered Petitioner to a Chevron station near the airport to buy him a pack of cigarettes.  When Petitioner returned, the Agent had disappeared.  Petitioner searched the Boise airport "for hours."  Eventually, airport police approached him and asked to see his identification.  Petitioner gave them his

---

[3] Jefferson Airplane, White Rabbit, on Surrealistic Pillow (RCA Victor 1967).

driver's license.  They discovered the outstanding warrant and arrested him.  Pet. at 5-6 ¶¶ 22-26.

Later, someone spotted the Agent at a local hotel – need one add, with a woman.  Phone calls were made.  The Agent was fired.  Petitioner found himself back behind bars in Boise.  Rather than start the whole process over again, he waived extradition on December 26, 2008.  Pet. at 6 ¶¶ 27-28.

## II. Petitioner's Claims and Request for Relief

Petitioner asserts that the Agent was acting as an agent of the State of Montana. He further asserts that the Agent, and therefore the State of Montana, violated the warrant of extradition.  He argues that all criminal proceedings against him by the State – specifically, the revocation hearing, which is set for February 19, 2009 – must be stopped.  He asks that his claims be investigated.  When they are validated, he contends that the United States Marshals should return him to Columbiana, Alabama, "for resolution of this matter."  Pet. at 7.

## III. Analysis

It is understandable that Petitioner might have felt apprehensive about driving a passel of unknown felons from state to state in a rented van under the direction of

a guardian sadly in need of supervision.[4]  There is no denying Petitioner's allegations that his situation was "unprecedented" and "bizarre."

But a federal habeas petition must fairly allege that the petitioner is "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. §§ 2241(c)(3), 2254(a).  The law does not support an allegation that Petitioner's *current* custody is made unlawful by his involuntary odyssey.  "The jurisdiction of the court . . . is not impaired by the manner in which the accused is brought before it." Lascelles v. Georgia, 148 U.S. 537, 544 (1893), quoted in Harden v. Pataki, 320 F.3d 1289, 1296 (11th Cir. 2003).  Masked State employees might have appeared in Pelham, Alabama, on the night of September 20, 2008, stolen Petitioner right out of his cell, and put him in the third boxcar on the midnight train departing for Kalispell via Bangor, Maine[5] – all without a warrant of any kind.  The trial court's jurisdiction to consider the State's petition to revoke would not be affected.  This is not to say that such behavior would be lawful.  It is not to say that Petitioner would have no legal recourse.  A federal habeas petition is not it.

Petitioner asks the Court to "issue an order TRO that stops all court/criminal proceedings re: revocation or other proceedings."  Pet. at 7.  "[T]he normal thing to

---

[4]  "Quis custodiet ipsos custodes?"  Juvenal, Satire 6:347-48, in Juvenal and Persius (Loeb Classical Library 2004).

[5]  Roger Miller, King of the Road (Mercury Records 1995) (originally released 1965).

do when federal courts are asked to enjoin pending proceedings in state courts is not to issue such injunctions." <u>Younger v. Harris</u>, 401 U.S. 37, 45 (1971).  Federal courts do not interfere in ongoing state criminal proceedings "except under extraordinary circumstances where the danger of irreparable loss is both great and immediate." <u>World Famous Drinking Emporium v. City of Tempe</u>, 820 F.2d 1079, 1082 (9th Cir. 1987) (citing <u>Younger</u>, 401 U.S. at 46).  Petitioner's revels now are ended.[6]  He is in no danger of immediate or irreparable loss.

The state court may decide that the process by which Petitioner comes before it is relevant to the revocation proceeding.  Or it may not.  Its authority to decide is not affected by the fact that Petitioner was placed in the custody of a Smokey who wanted to ride with the Bandit.[7]

Based on the foregoing, the Court enters the following:

## RECOMMENDATION

1.  The Petition (doc. 1) should be DENIED.

2.  The Clerk of Court should be directed to enter by separate document a judgment in favor of Respondent and against Petitioner.

---

[6]  William Shakespeare, <u>The Tempest</u> act 4, sc. 1, line 148 (Cengage Learning 1999).

[7]  <u>Smokey and the Bandit</u> (Universal Pictures 1977).

3.   A certificate of appealability should be DENIED because Petitioner's allegations do not show that his current custody violates federal law.

## NOTICE OF RIGHT TO OBJECT TO FINDINGS & RECOMMENDATIONS
## AND CONSEQUENCES OF FAILURE TO OBJECT

Pursuant to 28 U.S.C. § 636(b)(1), Petitioner may serve and file written objections to these Findings and Recommendations within ten (10) business days of the date entered as indicated on the Notice of Electronic Filing.  A district judge will make a de novo determination of those portions of the Findings and Recommendations to which objection is made.  The district judge may accept, reject, or modify, in whole or in part, the Findings and Recommendations.  Failure to timely file written objections may bar a de novo determination by the district judge.

Petitioner must immediately notify the Court of any change in his mailing address by filing a "Notice of Change of Address."  Failure to do so may result in dismissal of his remaining claims without notice to him.

DATED this 12th day of February, 2009.


/s/ Keith Strong
Keith Strong
United States Magistrate Judge